## HOWARD & SHATTUCK *vs.* BOSWELL RANSOM.

*Dictum.*—The action of *indebitatus assumpsit* for use and occupation, will lie in all cases either upon a contract express or implied, where a tenant enters upon land and enjoys the premises by the consent or permission of the owner, although it was otherwise at common law, and although the remedy cannot be traced to any specifick enactment of our legislature.

The plaintiffs declared in *indeb. assumpsit* for the use and occupation of certain pasture land of the plaintiffs, had and used for the depasturing of certain sheep of the defendant. The *proof* was, that the defendant agreed to furnish 100 sheep to pasture for the season, and to give $40 for their agistment, whether he furnished that number or not, and to pay at that rate for all he furnished over that number, (the plaintiffs undertaking to furnish sufficient pasturage for one hundred sheep at least,) and that certain sheep of the defendant were agisted in the plaintiffs' pasture accordingly.—*Held,* that the evidence did not tend to support the declaration.

THE defendant was attached to answer unto the plaintiffs in a plea of the case, for that at *Townshend,* in the county of *Windham,* on the 17th day of January, A. D. 1826, the defendant became justly indebted to the plaintiffs in the sum of fifty dollars, for the use of certain pasture land of the plaintiffs, and the eatage of the grass thereon growing, by them the plaintiffs before that time let to the defendant, and at his special instance and request, and by the defendant, according to such letting, had and used in and for the depasturing of certain sheep, for a long time before, then elapsed, and being so indebted, the defendant afterwards, to wit, on the day and year last aforesaid, at said *Townshend,* in consideration thereof, assumed and promised to pay the same on demand.—Yet, &c.

The general issue having been pleaded, the plaintiffs gave in evidence the following facts:—That two years before, the defendant agreed to furnish one hundred sheep to pasture that season, at forty dollars, for one hundred sheep and their lambs, and to pay in that proportion for all sheep that he furnished over one hundred;—that the defendant said he would pay that sum at all events, even if he furnished no sheep.—That the plaintiffs were to furnish sufficient feed and pasture for one hundred sheep and lambs, at least—That, according to the recollection and belief of the witness, the sheep were to run, before haying and rye-harvest, on the east side, and afterwards on the west side of the mountain, (a hill pasture of the plaintiffs)—That from 75 to 100 sheep were kept there that season. The witness recollected nothing being said about the care of looking after the sheep, except the defendant was to salt them.

The defendant thereupon insisted that the plaintiffs' testimony did not tend to prove the issue, in as much as it only proved a taking of sheep to pasture by the plaintiffs, and not a letting of land to be depastured by the defendant.

And the county court being of opinion that the evidence did not tend to support the declaration, directed a verdict, and gave judgment for the defendant.

To this opinion the plaintiffs excepted; and the cause now came before this Court, on a motion of the plaintiffs, that the

judgment of the county court be reversed, and for a new trial, founded on the exception aforesaid.

*Windham,*
*February,*
*1827.*

The case was argued by *Bradley,* for the plaintiffs, and *Hunt,* for the defendant.

Howard et.al.
*vs.*
Ransom.

PRENTISS, J. pronounced the following opinion of the Court.

It is not material in this case to inquire, whether an action of *assumpsit* for rent or the use of land, would lie at common law, or whether the action is alone given by the statute of 11 G. 2 c. 19. s. 14. It may be observed, however, since the subject was somewhat discussed in the argument, that at common law, a reservation of rent was regarded as a real contract, for which the only remedy was by distress or an action of debt ; and, therefore, if a fixed rent was received upon a parol demise of land, the contract was looked upon as one respecting the realty, and an action of *assumpsit* would not lie upon it to recover the rent reserved. Yet, where there had been in fact a use and occupation of premises by permission, and an express promise to pay a sum of money in consideration of such permission, it was considered that the permission to occupy did not amount to a lease, nor the promise to pay, to a reservation of rent, and that assumpsit might be maintained to recover a satisfaction for the use. But without such express promise, the action would not lie. (*Johnson* vs. *May,* 3 *Lev.* 150.----*Durtnal* vs. *Morgan,* *Cro. Jac.* 598.----*Naish* vs. *Tatlock,* 2 *H. Blac.* 319.----*Bull. N. P.* 138.) The statute referred to, however, gave the action of *assumpsit* for use and occupation, in all cases, except where the demise was by deed ; and although it was otherwise at common law, and we have no express statute authorizing the action, there is no doubt that *assumpsit* may be maintained here, to recover for rent or the use of land, either upon an express or implied promise. At an early period, the common law was adopted in this state, together with such statutory provisions, modifying and correcting it, as were suited to the condition and circumstances of the people, and the nature and form of the government. The 2d section of the act of 1782, which was re-enacted in 1787, after reciting that the statute law of England was so connected and interwoven with the common law, that our jurisprudence would be incomplete without it, adopted such statute laws, and parts of laws, as were passed for the *alteration and explanation* of the common law, prior to Oct. 1st, 1760, and were applicable to the circumstances, and not repugnant to the constitution or statutes of the state. Under this act, many provisions of the English statutes, made in alteration and amendment of the common law, especially those giving forms of remedies, and relating to pleas and pleadings, were introduced into our law ; and although this part of the act was omitted in the revision of 1797, and ceased from that time to be in force, yet the principles and rules which had been adopted and practised upon under it, and had received the sanction of

*Windham,*
February,
1827.

Howard et.al.
*vs.*
Ransom.

usage, became incorporated into, and have continued to form a part of our system of jurisprudence. It is only in this way, that we can account for many of the remedies, principles, and rules, recognized and acted upon by our courts, which certainly cannot be found in the common law, as exclusive of positive law enacted by statute, nor can they be traced to any specifick enactment of our legislature. Among them, the remedy by an action of *indebitatus assumpsit* for use and occupation, may be reckoned, which has been long in use here, and will undoubtedly lie in all cases, either upon a contract expressed or implied, where a tenant enters and enjoys premises, by the consent or permission of the owner.

But in the present case, as proof was given of an express contract between the parties, the action, if the proof supported the declaration, was clearly maintainable at common law, independent of any usage. The declaration is, *for the use of certain pasture land of the plaintiffs, and the eatage of the grass thereon growing, by the plaintiffs before that time let to the defendant, and by the defendant, according to such letting, had and used for the depasturing of certain sheep, &c.* The declaration is for the use of land let by the plaintiffs to the defendant, to be occupied by him for the depasturing of sheep, and by him occupied, according to such letting. Although proof of an actual lease was not requisite, yet it was undoubtedly necessary for the plaintiffs to shew an actual occupying and enjoying of land, in the manner alleged, either under an express letting by them, or by their permission. The nature of the use and occupation averred, necessarily supposes and implies a possession of the premises by the defendant, under the plaintiffs; and the question is, whether the proof given showed such possession, and thus supported the declaration.

The testimony, in substance, was, that the defendant agreed to furnish 100 sheep, to be pastured during the season, and to pay the plaintiffs the sum of $40 for pasturing them, and at that rate for all over 100; that the plaintiffs agreed to provide sufficient feed, and pasture the sheep on those terms; and that the defendant, under the contract, turned on the plaintiffs' pasture from 75 to 100 sheep, which were kept there during the season. The evidence appears to have had no tendency to show a letting of land, or any such use and occupation of land, as was necessary to maintain the action. The contract was evidently a contract on the part of the plaintiffs to pasture the sheep for the stipulated price, and on the part of the defendant, to provide the sheep, and pay the price, not for the use of the land, but for the agistment of the sheep. It was not a hiring of land, therefore, but a hiring of the sheep pastured. It is true, the defendant was to pay the agreed price, if he failed to furnish the sheep for pasturing; but this is to be considered as stipulated damages for the non-performance of the agreement on his part. The mountain pasture was spoken of as the place where

the sheep were to run, and it appears that the sheep were pastured there under the contract; but the plaintiffs were to furnish sufficient feed for the sheep, at all events, there or elsewhere, and to receive a compensation, which evidently had respect to the number of sheep to be pastured, and not to the use of any particular land; and it must be taken, we think, that the plaintiffs retained the pasture in their own possession. The feeding of the sheep there under the contract, therefore, cannot be regarded as a use or occupation of the land by the defendant, but as an agistment of the sheep by the plaintiffs themselves. The declaration appears to have been taken from a precedent in 2 *Chit. Pl.* 43, and in a note to that precedent it is said, that the count is proper, where the defendant has the use of the land, and turns in his cattle himself; but when the plaintiff retains the land in his own possession, and depastures the defendant's cattle himself, the count should be for agistment merely. As the evidence given did not support the declaration, the county court were right in directing a verdict for the defendant.

*Howard et.al.*
*vs.*
*Ransom.*

Judgment for the defendant affirmed.

*Chs. Phelps* and *Wm. C. Bradley*, for the plaintiffs.

*E. Ransom* and *Jona. Hunt*, for the defendant.